## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DAE ROBERSON, | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) No. 17 C 6156 ) ) Judge Sara L. Ellis |
| P.O. KENT LIEBERMANN, #225, P.O. MATTHEW CAMPOS, #191, Individually, and THE CITY OF JOLIET, a municipal corporation, | ) ) ) ) ) |
|     Defendants. | ) |

## OPINION AND ORDER

After City of Joliet police officers arrested Plaintiff Dae Roberson for obstruction and resisting arrest, Roberson brought claims against several of the officers pursuant to 42 U.S.C. § 1983 for excessive force (Count I), unlawful stop (Count II), false arrest (Count III), and malicious prosecution (Count IV). Roberson also filed a claim for indemnification against Defendant City of Joliet for any judgment entered against the officers (Count V). Roberson has since dismissed all of the individual officers with the exception of Defendants Kent Liebermann and Matthew Campos (collectively, the "Defendants"). Defendants now move for partial summary judgment as to Campos' liability on the unlawful stop claim, and as to both officers' liability on the false arrest claim. Because Roberson fails to respond to Defendants' arguments that Campos played no role in the allegedly unlawful stop, the Court grants summary judgment to Campos as to the alleged unlawful stop. But the Court denies summary judgment as to the false arrest claim because the record before the Court precludes a finding of qualified immunity.

# BACKGROUND[1]

At approximately 6:20 p.m. on September 19, 2016, an unknown person called 911 to complain about gang members loitering around the intersection of Benton and Youngs Avenues in Joliet, Illinois. Several squads responded to the call, and Liebermann was the first to arrive with his partner Officer Zettergren. Liebermann approached going westbound on Benton Avenue. Campos, who was in a different squad car, arrived shortly thereafter from the opposite end of the block. In the previous months, Campos and Liebermann had responded to similar calls in the same area, and they were aware of numerous gang-related crimes that had occurred, including a shooting a few days earlier. They both knew that members of the Vice Lords street gang hung out in this area.

Upon leaving his car, Liebermann saw numerous people in the street about a block away. As he and Zettergren approached, there was a group of four people walking eastbound in his direction. Liebermann recognized two people in the group who were known members of the Vice Lords, one of whom Liebermann had personally arrested for illegal weapon possession. Liebermann was not familiar with the other two people, one of whom was Roberson. Roberson was wearing black and red clothing—colors that are associated with the Vice Lords.

Liebermann and Zettergren stopped the group of four people and asked them to step over to a chain link fence nearby so that the officers could conduct a pat-down search for weapons. Here, Liebermann's testimony diverges from Roberson's. Liebermann testified that three of the

---

[1] The facts in this section are largely derived from the Agreed Statement of Uncontested Material Facts ("Agreed Statement"). The Court has also considered the supporting exhibits, including the video of the incident, and the transcripts of Roberson and Defendants' depositions. The Court has included in this background section those additional facts that are supported by the exhibits and are relevant to resolving the pending motion for summary judgment. The Court has noted where these facts diverge from the Agreed Statement. Because neither party contests the accuracy of the video, the Court views these facts "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). All other facts are taken in the light most favorable to Roberson, the non-movant.

four people complied, but that Roberson turned around and began walking away from him. Roberson testified that he never changed direction, and that after they told him to stop, he "[t]ook one extra step," after which they told him to stop again and he immediately stopped. Doc. 60-1 at 40:19–21. Both parties agree that Liebermann then grabbed Roberson, physically pulled him to the fence, and told him to put his hands on the fence. Roberson did not physically resist.

The parties again offer different versions of what happened next. Liebermann testified that Roberson spun around and that Liebermann, who still had one hand on Roberson's right arm, leaned his weight against Roberson to push him against the fence. Roberson does not mention any of this in his testimony. However, both parties agree that while Zettergren began to search the other three individuals in the group, Roberson was angry and "exchanged words" with Liebermann. Doc. 60 ¶ 28. Liebermann then ordered Roberson to place his hands behind his back as "Liebermann was arresting Roberson for obstructing a police officer." *Id.* ¶ 33. Roberson refused and kept his hands on the fence for approximately twenty seconds. Liebermann began to struggle with Roberson, punched Roberson twice in his side, and again ordered Roberson to place his hands behind his back. Roberson continued to hold on to the fence for approximately thirty to forty more seconds before Liebermann and other officers who had arrived, including Campos, were able to place him in handcuffs.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party

seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**ANALYSIS**

**I.     Unlawful Stop Claim**

Defendants argue that Campos cannot be liable for the unlawful stop claim because Campos did not participate in the initial stop. *See Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." (citation omitted)). Roberson makes no argument in response. Thus, Roberson has waived his argument, and the Court concludes that Campos is entitled to summary judgment on the unlawful stop claim. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

**II.    False Arrest Claim**

Defendants assert that they had probable cause to arrest Roberson for resisting or obstructing a police officer, and that even if they lacked probable cause they are protected by qualified immunity. "Probable cause to arrest is an absolute defense to any claim under Section

4

1983 against police officers for wrongful arrest[.]" *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). "[P]robable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007). This is a "purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). Even if the officers lacked probable cause to arrest Roberson, qualified immunity protects them from civil liability so long as they did not violate a clearly established statutory or constitutional right about which a reasonable officer would have known. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). In other words, qualified immunity protects Defendants if a reasonable officer could have believed that he had probable cause to arrest Roberson in light of the information he possessed at the time of arrest. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). Courts have referred to this standard as "arguable probable cause." *Abbott*, 705 F.3d at 714–15. "[Q]ualified immunity in this context protects officers who reasonably but mistakenly believe that probable cause exists." *Id.* at 715.

"The existence of probable cause or arguable probable cause depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Id*. Under Illinois law, a person who "knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his or her official capacity" commits a crime. 720 Ill. Comp. Stat. 5/31-1. Resistance requires "a physical act that impedes, hinders, interrupts, prevents, or delays the performance of the officer's duties, such as by going limp, forcefully resisting arrest, or physically helping another party to avoid arrest." *People v. McCoy*, 881 N.E.2d 621, 630, 378 Ill. App. 3d 954, 317 Ill. Dec. 453 (2008). Obstruction does not

5

require a physical act but instead focuses "on the tendency of the conduct to interpose an obstacle that impedes or hinders the officer in the performance of his authorized duties." *People v. Baskerville*, 963 N.E.2d 898, 905, 2012 IL 111056, 357 Ill. Dec. 500 (2012).

Defendants argue that there was probable cause or at least arguable probable cause to arrest Roberson for resisting arrest once Roberson refused to take his hands off the fence. Roberson responds that holding on to a fence was not a physical act of resistance but merely delayed compliance. *See Skube v. Williamson*, No. CV 12-3185, 2015 WL 890363, at *7 (C.D. Ill. Feb. 27, 2015) ("[A] short period of arguing and not complying with police orders does not constitute resisting arrest."). By largely focusing on what transpired *after* Liebermann ordered Roberson to place his hands behind his back, both parties gloss over the first question in the Court's analysis: when exactly did Liebermann place Roberson under arrest? For if Liebermann seized Roberson when he asked Roberson to place his hands behind his back, Roberson's subsequent actions could not supply probable cause for the initial seizure. *Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964) ("Whether [an] arrest was constitutionally valid depends in turn upon whether, *at the moment the arrest was made*, the officers had probable cause to make it[.]" (emphasis added)). And if Liebermann lacked probable cause for this initial seizure it would have been an unlawful arrest. *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) ("An unlawful arrest occurs when a person is seized by police without probable cause." (citation omitted)).

Defendants briefly address this by arguing that it makes no difference, for a person cannot resist even an unlawful arrest. *See City of Champaign v. Torres*, 824 N.E.2d 624, 629, 214 Ill. 2d 234, 291 Ill. Dec. 768 (2005) ("[A]n arrest made by a peace officer is an 'authorized act' even if the arrest is unlawful."). "Therefore, even if the initial stop was unlawful, and even

if Liebermann's subsequent arrest was also unlawful, Roberson's refusal still gives probable cause for his arrest." Doc. 59 at 6. Illinois cases in the criminal context support this conclusion. *See People v. Jones*, 35 N.E.3d 970, 972, 2015 IL App (2d) 130387, 394 Ill. Dec. 1 ("Where the authorized act is an arrest, the inquiry usually ends because a defendant is not privileged to resist even an unlawful arrest."). But in *Abbott*, the Seventh Circuit examined "[t]he effect of this rule on a § 1983 false-arrest claim" and concluded that resistance to an unlawful arrest does not automatically defeat a plaintiff's claim. 705 F.3d at 720–21.

The *Abbott* court reached this conclusion by examining its previous ruling in *Brooks v. City of Aurora, Illinois*, 653 F.3d 478 (7th Cir. 2011). In *Brooks*, an officer attempted to arrest the plaintiff on an allegedly unlawful warrant for driving with a suspended license. *Id.* at 481, 483. When the officer attempted to grab the plaintiff's wrist to handcuff him, the plaintiff broke free, backpedaled away, and "repeatedly, physically rebuffed [the officer]'s attempts to grasp him." *Id.* at 484. The officer eventually subdued the plaintiff with pepper spray. *Id.* The plaintiff subsequently brought a false arrest claim on the grounds that 1) the officer lacked probable cause to believe the plaintiff was resisting arrest, and 2) the officer had knowingly procured the warrant with false testimony causing his arrest to be unlawful. *Id.* at 483. With respect to the first question, the court found that the officer had arguable probable cause to arrest the plaintiff for resisting arrest. *Id.* at 484. The Court also found that this rendered the second question irrelevant because "Mr. Brook's evasion of detention means that a successful Fourth Amendment seizure did not occur until after Mr. Brooks was incapacitated by the pepper spray." *Id.* at 484. Therefore, the Court held there was no need to determine whether the warrant was unlawful, "because, at the time Mr. Brooks was seized, the officers had probable cause to arrest him for resisting a peace officer." *Id.* at 485.

7

The plaintiff in *Abbott*, by contrast, had not tried to evade arrest before she was seized. The events leading to the plaintiff's arrest began after a sheriff's deputy arrested the plaintiff's son at the plaintiff's residence. *Id.* at 709–10. After placing the son in the backseat of his cruiser, the deputy began to drive away and accidentally collided with plaintiff's parked car. *Id.* at 710. The deputy stepped out of his car in order to attend to the son in the backseat, who he believed was trying to escape. *Id.* Simultaneously the plaintiff, upset about the collision, began screaming and walking toward her vehicle. *Id.* at 710–11. The deputy ordered her to stop twice, before deploying his taser against her. *Id.* at 711. While she was on the ground, the deputy ordered her to roll over onto her stomach. *Id.* She did not, so the deputy fired his taser at her again before rolling her over to handcuff her. *Id.* The district court concluded that there was probable cause to arrest the plaintiff for resisting arrest because the plaintiff ignored the deputy's orders to stop and then ignored his order to turn over onto her stomach. *Id.* at 718–19. The Seventh Circuit disagreed and found that there was no probable cause to believe the plaintiff had resisted arrest when the deputy initially fired his taser, "inasmuch as there had been no arrest or attempted arrest prior to that point." *Id.* at 720. The Seventh Circuit also explained that the second act of resistance, when the plaintiff failed to roll onto her stomach, was not significant to the court's inquiry, because the officer had already seized the plaintiff at that point in time. *Id.* at 721. "Unlike *Brooks*, where the probable-cause determination was made with reference to the second (and successful) attempted seizure, here the probable-cause determination must be made with reference to the first (and successful) attempt at a seizure, the initial deployment of the taser." *Id.*

The *Abbott* court ultimately found that the deputy was entitled to qualified immunity because there was arguable probable cause to arrest the plaintiff for obstruction when she failed

to comply with his orders to stop. *Id.* at 723–24. But for the purposes of determining Liebermann's claim for qualified immunity, *Abbott* dictates that there must have been probable cause or arguable probable cause to arrest Roberson at the moment Liebermann seized him. *Id.* at 719 ("[T]he district court failed to pinpoint the moment at which [the officer] arrested or attempted to arrest [the plaintiff], which is necessary to determine whether her actions constituted resisting arrest."); *see also People v. Agnew-Downs*, 936 N.E.2d 166, 174, 404 Ill. App. 3d 218, 344 Ill. Dec. 24 (2010) ("[P]inpointing the time of arrest was crucial in determining whether defendant had in fact resisted arrest[.]"). Thus, the Court must determine when Liebermann first seized Roberson.

To determine when an arrest occurred, the Court "engages in an objective inquiry that presupposes an innocent person." *Abbott*, 705 F.3d at 719. That is, when would a reasonable person in Roberson's shoes, innocent of any crime, have thought that he was under arrest? *Id.* ("A seizure rises to the level of an arrest 'when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" (citation omitted)).

The facts before the Court establish that Liebermann seized Roberson when he first attempted to place him in handcuffs. After directing Roberson to stop walking, Liebermann physically pulled Roberson by the arm toward the fence, and Liebermann testified that he maintained the physical contact with Roberson. Doc. 60-2 at 51:12–18 ("When he got to the fence . . . I had a hold of his right hand still."). As the Supreme Court has explained, "[t]he word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991). From that moment forward, Liebermann,

9

and later other officers, restrained Roberson's freedom of movement. *See Brendlin v. California*, 551 U.S. 249, 254, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007) ("A person is seized by the police . . . when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." (citations omitted) (internal quotation marks omitted)); *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011) ("[A]n officer's application of physical force always constitutes a seizure[.]"). By the time Liebermann told Roberson that he was under arrest, a reasonable person in Roberson's place would have believed that his freedom was constrained to a degree associated with a formal arrest. *Abbott*, 705 F.3d at 719.

The Court's inquiry now turns to whether there was probable cause to arrest Roberson at the moment of the initial seizure. Liebermann's stated reason was that he "was going to arrest [Roberson] for obstructing because he wasn't obeying the commands during the pat down." Doc. 60-2 at 55:2–4. If Roberson had, in fact, spun around to face Liebermann during the initial stop, this would have arguably impeded or frustrated Liebermann's attempts to conduct a pat-down search for weapons. *Baskerville*, 963 N.E.2d at 905 (purpose of § 31-1 is "to prevent 'frustration of the valid enforcement of the law.'" (citation omitted)). Similar to the plaintiff's actions in *Abbott*, "reasonable minds could differ" as to whether this would have vaulted a "mere verbal argument or refusal to act [into] an act of physical resistance or obstruction." 705 F.3d at 722. This would have been enough to cloak Defendants with qualified immunity. *Id.* ("[W]e need not determine whether there was probable cause, for the simple fact that reasonable minds could differ as to the meaning of the law leads to the conclusion that [the deputy] is shielded by qualified immunity.").

But at this stage, the Court must decide whether the record before it, viewed in the light most favorable to Roberson, presents a factual dispute sufficient to present the case to a jury. *Anderson*, 477 U.S. at 248 ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Roberson never concedes that he spun around to face Liebermann during the pat-down search. The Agreed Statement of Uncontested Material Facts ("Agreed Statement") does not mention anything about this action, and neither does Roberson in his deposition. Roberson testified that once he placed his hands on the fence, Liebermann simply proceeded to pull out his handcuffs to arrest him. Doc. 60-1 at 46:5–10. According to the Agreed Statement, the closest Roberson comes to obstruction is when he "took one step away [from Liebermann] because he did not think Liebermann had the right to stop him." Doc. 60 ¶ 23. Even this statement is difficult to square from Roberson's deposition. He only testified that he "took one extra step" after Liebermann told him to stop. Doc. 60-1 at 40:20. He did not say that he took a step "away" from Liebermann. Doc. 60 ¶ 23. His testimony indicates that he simply took an extra step in the direction he was already traveling. Doc. 60-1 at 40:17–21.

Based on the facts before the Court, viewed in the light most favorable to Roberson, a reasonable officer could not have believed there was probable cause to arrest Roberson for resisting an officer or obstruction at this point. The parties dispute whether Roberson had "repeatedly, physically rebuffed [Liebermann's] attempts to grasp him," *Brooks*, 653 F.3d at 484, disobeyed his commands, *see People v. Smith*, 77 N.E.3d 87, 92, 2013 IL App (3d) 110477, 412 Ill. Dec. 919 (2013), or done anything to place Liebermann in danger, *see People v. Shenault*, 25 N.E.3d 703, 711, 2014 IL App (2d) 130211, 389 Ill. Dec. 58 (2014) (by refusing to exit her car plaintiff placed officer's safety at risk and thereby committed obstruction). The only

11

undisputed facts are that "Roberson was angry and he and Liebermann exchanged words." Doc. 60 ¶ 28. It is unclear what exactly was said so the Court cannot determine whether this was anything more than "mere verbal argument." *Abbott*, 705 F.3d at 722. It is clearly established law that this alone is not a reason to arrest someone. *People v. Long*, 738 N.E.2d 216, 222, 316 Ill. App. 3d 919, 250 Ill. Dec. 252 (2000) ("Merely arguing with a police officer—even using abusive language—does not constitute resisting a peace officer."); *Jones v. Clark*, 630 F.3d 677, 684–85 (7th Cir. 2011) ("mere argument with a policeman" did not supply arguable probable cause for obstruction); *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009) (right to be free from arrest not supported by probable cause "has been clearly established for a long time"); *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003) ("well settled" that "mere argument" is insufficient to violate § 31-1). Thus, Roberson's actions did not supply probable cause or arguable probable cause for resisting an officer or obstruction under § 31-1 as to the initial arrest. Pursuant to *Abbott*, Defendants are not entitled to qualified immunity from Roberson's false arrest claim. 705 F.3d at 721.

In sum, a factual dispute precludes the Court from finding that Defendants are entitled to qualified immunity. This may be in part because the parties spend little time on the facts surrounding the alleged obstruction that led to the initial seizure and instead focus on Roberson's conduct after his arrest. Although Liebermann's role in the arrest is undisputed, it is unclear at what point Campos became involved. The record before the Court suggests that Campos did not enter the fray until officers had already removed Roberson from the fence.[2] But because the

---

[2] Campos testified that he was still half a block away when Liebermann placed Roberson against the fence. Doc. 60-3 at 34:6–7, 35:4–6; *see also* Doc. 60 ¶ 21 ("At the time Liebermann determined to conduct the pat-down search, he and Zettergren were outnumbered, 4 to 2."). He further testified that he first encountered Roberson after Liebermann had already placed handcuffs on one of Roberson's hands. Doc. 60-3 at 38:9–18, 43:18–21, 45:17–46:24. Liebermann testified that only Zettergren and possibly a third officer, H. Weller, were present when the seizure occurred. Doc. 60-2 at 57:24–58:19. Roberson

parties' do not offer any argument regarding Campos' involvement in the initial seizure, the Court does not consider the issue at this time.  Defendants are welcome to bring another motion, before trial or at trial, if there are grounds for granting Campos qualified immunity as to the unlawful arrest according to the timeline of the seizure described above.  For now, Roberson may proceed with his remaining claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for partial summary judgment [58].  The Court enters judgment for Campos on the unlawful stop claim (Count II).

Dated: October 2, 2019

SARA L. ELLIS
United States District Judge

---

does not mention any other officer participating in the initial arrest.  Only after Liebermann ordered Roberson to place his hands behind his back does Roberson mention a third officer that threatened to use his taser.  Doc. 60-1 at 49:3–7, 54:5–9.